GEOFFREY A. HANSEN
Acting Federal Public Defender
JEROME E. MATTHEWS
Assistant Federal Public Defender
555 - 12th Street
Suite 650
Oakland, CA 94607
Telephone: (510) 637-3500

Counsel for Defendant RAYMOND THOMAS

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | No. CR-11 00497 CW |
| ) | |
| Plaintiff, ) | **RAYMOND THOMAS'S SENTENCING** |
| ) | **MEMORANDUM** |
| vs. ) | |
| ) | Sentencing Date:  19 June 2012 |
| RAYMOND THOMAS, ) | Time:  2:30 p.m. |
| ) | |
| Defendant. ) | |
| _____ ) | |

**1. Preliminary Statement**

For nine years Raymond Thomas was a dedicated police officer in Richmond, California, a city rife with crime. He performed his job with fairness and integrity, even in the most dangerous of assignments, including interdicting street gang conflicts and narcotics operations. Today, after resigning from the department, he finds himself bankrupt, scouring the Bay Area for clients in need of janitorial services, trying to support a wife and two very young children, facing the imminent sale of his home at a foreclosure auction and facing the prospect of living the rest of his life with the indelible stain of a felony conviction.

After careful consideration of his conduct and the point to which the criminal justice

SENT. MEMO.                                    1

system had brought him, Mr Thomas accepted full responsibility for his part in the conduct that brings him and his co-defendant, Danny Harris, before the Court. He was the first to enter a guilty plea.

After equally careful consideration of Mr Thomas's conduct and his relative position in the conspiracy to which he pleaded guilty, the probation officer recommends a sentence of probation. For the following reasons, Mr Thomas asks that the Court follow this recommendation and impose sentence accordingly.

**2. Background**

Raymond Thomas comes from a family of law enforcement officers. His father was a correctional officer and his brother currently is a highway patrol officer with the Texas Department of Public Safey. After stints selling cars then gym memberships, Mr Thomas decided to follow in his father's footsteps and became a police officer with the Richmond Police Department. He became a regular patrol officer and was then assigned to NITRO, a team of specially-trained officers focusing on high risk narcotics and gang violence interdiction.

As the probation officer correctly notes, Mr Thomas and Danny Harris were co-owners of a private security company that employed Richmond Police "Explorers." When someone wrote an anonymous letter to the Richmond Police Department complaining that Officers Harris and Thomas were involved in offering private security services in violation of department policy, Mr Harris and Thomas suspected that their lieutenant, Michael Booker, was the author. Their suspicions rested primarily on their knowledge that Lieutenant Booker was running his own private security company and was therefore in direct competition for clients. With knowledge that Lieutenant Booker was engaging in extra-marital affairs – presumably while still on duty – Mr Harris and Mr Thomas approached Chris Butler, a private investigator, to conduct a "sting" operation using a female operative to induce Booker to engage in inappropriate behavior. The Booker sting was successful, though it did not result in any disciplinary action against Booker.

As further summarized by the probation officer, the present case involves Officer Harris's

straw purchases of firearms for Explorers Rios and Torres. What the probation report doesn't capture, however, is that Mr Thomas was not aware of these straw purchases and, when Mr Harris asked him for assistance in retrieving the guns from Rios and Torres, Mr Thomas thought that Mr Harris had lent out the guns for use in connection with Rios and Torres's security duties and that the guns rightfully belonged to Mr. Harris.

Later, after an internal affairs investigation had been commenced, Mr Thomas understood that the case was more serious than he had imagined. By this chronology Mr Harris does not seek to minimize his participation in the conspiracy; nonetheless, his state of mind at outset lends context to the manner in which he became involved.

After full and frank discussions with defense counsel, he decided to enter a guilty plea to conspiracy to impede an official investigation.

**3. Sentencing Recommendation**

The Supreme Court recently altered the now familiar post-*Booker* landscape by reminding the district courts that prison sentences may not be increased to serve the purposes of rehabilitation, for the simple – and statutorily expressed – reason that imprisonment is not designed to rehabilitate criminal defendants. In *Tapia v. United States*, 131 S.Ct. 2382 (2011), the Court considered the relationship between 18 U.S.C. §§ 3553(a) and 3582(a), and held that it was error for a district court to increase a term of imprisonment in order to promote a defendant's rehabilitation.[1] *Tapia*, 131 S.Ct. at 2389-90. When, as here, a defendant's background begs the need for rehabilitation, the Court should tailor its sentence to maximize that salutary objective by imposing a lesser amount of prison time.[2] A sentence of probation is sufficient but not greater

---

[1] Section 3582(a) instructs that "imprisonment is not an appropriate mans of promoting correction and rehabilitation."

[2] This indeed is the government position on what the district court may do to foster rehabilitation, although the Supreme Court expressed no views on it. *Tapia*, 131 S.Ct. at 2390 n.5. (noting government's argument that "Congress did not intend to prohibit courts from imposing *less* imprisonment in order to promote a defendant's rehabilitation).

SENT. MEMO. 3

than that necessary to meet the directives of 18 U.S.C. §3553(a), as clarified by *Tapia*.

### A. A Sentence of Probation is Appropriate in This Case

Congress has made clear its belief that imprisonment generally is inappropriate for a first offender. In enacting 28 U.S.C. § 994(j), Congress stressed

> the general appropriateness of imposing a sentence other than imprisonment in cases in which the defendant is a first offender who has not been convicted of a crime of violence or an otherwise serious offense.

The offense conduct in this case is conspiracy to impede an official investigation. While Mr Thomas was a police officer at the time, his conduct was in large part motivated by a misguided sense of allegiance to a fellow officer. Mr Thomas scarcely fits the profile of the type of defendant for which a probationary sentence is discouraged.

Under the terms of Mr Thomas's plea agreement, the government agrees to recommend a sentence of not more than four months in custody. Even under the guidelines, such a sentence is within Zone B, which permits imposition of a sentence of probation that includes a condition that substitutes community confinement or home detention as provided in §5C1.1(e). The probation officer believes that a sentence of three years probation with six months home detention and LMON is sufficient. Mr Thomas respectfully asks the Court to keep these facts in mind while considering the following additional reasons why the probation officer's recommendation is appropriate.

#### (1) Compelling Family Circumstances Counsel Against a Prison Sentence

Before and after *Booker*, whether characterized as a guidelines departure or section 3553(a) variance, courts have long recognized that a defendant's family pays a high price when the court imposes a prison sentence. This common-sense approach to sentencing affirms the public interest in holding a defendant accountable for his conduct while acknowledging the correlative public interest in minimizing harm to family members who will be affected by her incarceration. *See generally*, Hagan & Dinovitzer, *Collateral Consequences of Imprisonment for Children, Communities and Prisoners*, 26 Crime & Justice 121 (1999). Mindful of the collateral

consequences of separating a parent from his children, courts have not hesitated to impose non-guidelines sentences based on family circumstances. *E.g.*, *United States v. Whitehead*, 532 F.3d 991, 993 (9th Cir. 2008) (where guidelines range was 41 to 51 months, imposition of sentence of probation affirmed in part due to close relationship of father and child); *United States v. Husein*, 478 F.3d 318 (6th Cir. 2007) (where guidelines range was 37 to 46 months, imposition of 270 days home confinement affirmed based on family circumstances); *United States v. Galante*, 111 F.3d 1029 (2nd Cir. 1997) (affirming 13-level departure in drug case from 46-57 months to 8 days where defendant showed he was a conscientious and caring father of two young sons who would have faced severe financial hardships).

So too here. Mr Thomas is father and sole provider for his wife, and two sons, one aged 3 years and the other 8 months. A sentence of probation would permit him to remain the family caregiver, while showing fidelity to the government's and society's interest in deterring unlawful conduct.

**(2) A Sentence of Probation is Sufficient**

In addition to section 3553(a)'s general directives, the Court has three additional sources from which it can draw in imposing a sentence of probation. The first is Congress and the Sentencing Commission. The pre-sentence report correctly notes that probation is authorized for the count of conviction. PSR, ¶¶ 52, 53; 18 U.S.C. § 3561(c)(1); USSG §5B1.2(a)(1).

The second and third sources are case law and the Department of Justice, respectively, and the Court need not probe very far to find in each of them support for a sentence of probation in light of compelling family circumstances. In *Gall*, the Supreme Court found that a sentence of probation was a reasonable and appropriate sentence for a young college student convicted of conspiracy to distribute Ecstasy, a crime which netted him $30,000. The government argued that probation was inappropriately lenient for such a serious offense and was inconsistent with the goal of promoting respect for the law. Mindful of this argument, the Court nonetheless observed that the government itself conceded probation was appropriate given compelling family

circumstances:

> We also note that the Government did not argue below, and has not argued here, that a sentence of probation could never be imposed for a crime identical to Gall's. Indeed, it acknowledged that probation could be permissible if the record contained different – but in our view, no more compelling – mitigating evidence. Tr. of Oral Arg. 37-38 (stating that probation could be an appropriate sentence, given the exact same offense, if "there are compelling family circumstances where individuals will be very badly hurt in the defendant's family if no one is available to take care of them").

*Gall*, 128 S.Ct. at 602.

It bears mentioning that probation is not a free ride – it is punishment. *Korematsu v. United States*, 319 U.S. 432 (1942); *see generally United States v. Scott*, 424 F.3d 888, 897 (9th Cir. 2005) (probation is punishment and therefore justifies probationers' "sharply reduced liberty and privacy interests").

### (3) A Sentence of Probation Will Sufficiently Protect the Public

Mr Thomas has zero criminal history points. Statistically, he is the least likely of all to re-offend. According to a Sentencing Commission study, "Offenders with zero criminal history points have lower recidivism rates than offenders with one or more criminal history points." *Recidivism and the "First Offender*," United States Sentencing Commission (May, 2004).

These findings carry equal force even if the Court applies a departure analysis to this factor. In *United States v. Ward*, 814 F.Supp. 23 (E.D. Va. 1993), for example, the district court departed from a life sentence to 300 months for distribution of 27 kilograms of crack cocaine, 6.5 kilograms of powder cocaine, and possession of a firearm in connection with drug trafficking because the guidelines did not take into account "the length of time a person refrains from the commission of crimes." *Id.* at 24.

Mr Thomas has remained free of any contact with the criminal justice system his entire life. The length of time during which he has not engaged in criminal conduct therefore militates against a prison sentence.

SENT. MEMO.                                6

**(4)  Mr Thomas Needs No Additional Deterrence**

Mr Thomas has been staggered by the prospect of being sent to prison, as well as the trauma of the process of indictment, arrest and plea.  He did not merely lose his job – he resigned following an intensive internal affairs investigation, having stuck his neck out for a fellow officer, and found himself the subject of numerous newspaper articles, television news segments and obloquy from within the Richmond Police Department.

In addition, Mr Thomas feels that he has brought shame upon not only his family here in the Bay Area, but also upon his father and brother; it was their careers in law enforcement that cemented Mr Thomas's decision to become a police officer.

Mr Thomas has learned a painful lesson and will bear the stigma associated with a felony conviction for the rest of his life, a matter of no small consequence for anyone but especially so for a former police officer.  If justice is in fact a moderating principle, this lesson, together with Mr Thomas's stated and demonstrable commitment not to re-offend, should be enough.

**4. Conclusion**

For the reasons stated, Raymond Thomas respectfully requests that the Court impose a sentence of probation, with the terms and conditions recommended by the probation officer.

Dated: 12 June 2012

    Respectfully submitted,

    GEOFFREY A. HANSEN
    Acting Federal Public Defender

    /s/

    JEROME E. MATTHEWS
    Assistant Federal Public Defender